UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x
CHRISTOPHER COPELAND, on Behalf of : Civil Action No. 1:08-cv-09060-DC
Himself and All Others Similarly Situated, :
                                          :
                Plaintiff,                :
                                          :
        vs.                               :
                                          :
FORTIS, FORTIS BANK S.A./N.V., FORTIS     :
NV, HERMAN VERWILST, JEAN-PAUL            :
VOTRON, MAURICE LIPPENS, GILBERT          :
MITTLER and FILIP DIERCKX,                :
                                          :
                Defendants.               :
                                          :
————————————————————— x


MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION
FOR RECONSIDERATION AND FOR LEAVE TO FILE THE [PROPOSED] SECOND
AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   STATEMENT OF PERTINENT FACTS ......................................................................2

    A.    Fortis and Its Securities .....................................................................................2

    B.    Procedural History .............................................................................................3

    C.    The Court's Opinion ..........................................................................................4

III.  ARGUMENT ............................................................................................................4

    A.    Having Concluded that It Lacked Jurisdiction Over Plaintiffs' Claims, the
        Court Was Without Power to Dismiss Them "With Prejudice"............................5

    B.    Leave to Amend is Necessary to Avoid Manifest Injustice .................................6

        1.    Leave to Amend Would Not be Futile Because the SAC Cures Any
            Perceived Jurisdictional Deficiency in the FAC ........................................7

            a.    The Allegations of the SAC Demonstrate that Defendants'
                Fraud Had a Substantial Effect on U.S. Investors .........................8

            b.    The SAC Alleges a Basis for Subject Matter Jurisdiction
                Over the Claims of Foreign Investors...........................................12

        2.    The SAC is Not the Result of Undue Delay or Bad Faith and the
            Proposed Amendments Would Not Prejudice Defendants......................13

IV.   CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.*,
   485 F.3d 85 (2d Cir. 2007), *cert. denied*, 552 U.S. 1295 (2008) ............................................6

*Apace Communs., LTD. v. Burke*,
   584 F. Supp. 2d 591 (S.D.N.Y. 2008) ...................................................................................7

*Bersch v. Drexel Firestone, Inc.*,
   519 F.2d 974 (2d Cir. 1975) ...........................................................................................8, 11

*Cobalt Multifamily Investors I, LLC v. Shapiro*,
   No. 06 Civ. 6468 (KMW) (MHD), 2009 U.S. Dist. LEXIS 60481
   (S.D.N.Y. Jul. 15, 2009) ........................................................................................................5

*Consol. Gold Fields PLC, v. Minorco, S.A.*,
   871 F.2d 252 (2d Cir. 1989) ...........................................................................................8, 10

*Copeland v. Fortis*,
   No. 08 civ. 9060 (DC), 2010 U.S. Dist. LEXIS 14726
   (S.D.N.Y. Feb. 18, 2010) ...........................................................................................2, 4, 8, 11

*Cornwell v. Credit Suisse Group*,
   No. 08 Civ. 3758 (VM), 2010 U.S. Dist. LEXIS 13927
   (S.D.N.Y. Feb. 11, 2010) ..............................................................................................11, 13

*Cromer Fin. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001) ...................................................................................7

*DSND Subsea AS v. Oceanografia, S.A. de C.V.*,
   569 F. Supp. 2d 339 (S.D.N.Y. 2008) .................................................................................14

*Edinburgh Council ex rel. Lothian Pension Fund v. Vodafone Group Pub. Ltd.*,
   No. 07 Civ. 9921 (PKC), 2009 U.S. Dist. LEXIS 29835
   (S.D.N.Y. Apr. 9, 2009) .........................................................................................................9

*Ernst Haas Studio, Inc. v. Palm Press, Inc.*,
   164 F.3d 110 (2d Cir. 1999) .................................................................................................14

*Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*,
   147 F.3d 118 (2d Cir. 1988), *cert. denied*, 525 U.S. 1139 (1999) ...............................8, 12, 13

**Page**

*Evangelista v. Ashcroft,*
    359 F.3d 145 (2d Cir. 2004) ............................................................................... 14

*Frederiksen v. City of Lockport,*
    384 F.3d 437 (7th Cir. 2004) ................................................................................. 6

*Harris v. City of New York,*
    186 F.3d 243 (2d Cir. 1999) ............................................................................... 14

*Hernandez v. Conriv Realty Assocs.,*
    182 F.3d 121 (2d Cir. 1999) ................................................................................. 5

*In re Adelphia Communs. Corp. Sec. & Derivative Litig.,*
    No. 03 MDL 1529 (LMM), 2009 U.S. Dist. LEXIS 56013
    (S.D.N.Y. Jul. 1, 2009) ......................................................................................... 5

*In re Boesky Sec. Litig.,*
    882 F. Supp. 1371 (S.D.N.Y. 1995) .................................................................. 6, 7

*In re Nat'l Australia Bank Sec. Litig.,*
    No. 03 Civ. 6537 (BSJ), 2006 U.S. Dist. LEXIS 94162
    (S.D.N.Y. Oct. 25, 2006) .................................................................................. 9, 11

*In re Royal Ahold N.V. Sec. & ERISA Litig.,*
    219 F.R.D. 343 (D. Md. 2003) ........................................................................ 11, 12

*In re SCOR Holding (Switzerland) AG Litig.,*
    537 F. Supp. 2d 556 (S.D.N.Y. 2008) ............................................................... 8, 9

*In re Vivendi Universal, S.A. Sec. Litig.,*
    No. 02 Civ. 5571 (RJH), 2004 U.S. Dist. LEXIS 21230
    (S.D.N.Y. Oct. 19, 2004) .................................................................................. 7, 13

*In re Winstar Commc'ns,*
    No. 01 CV 3014 (GBD), 2006 U.S. Dist. LEXIS 7618
    (S.D.N.Y. Feb. 27, 2006) ....................................................................................... 6

*Itoba Ltd. v. Lep Group PLC,*
    54 F.3d 118 (2d Cir. 1995) .................................................................................... 7

*Kiobel v. Royal Dutch Petroleum Co.,*
    No. 02 Civ. 7618 (KMW) (HBP), 2009 U.S. Dist. LEXIS 106798
    (S.D.N.Y. Nov. 16, 2009) ...................................................................................... 4

Page

*Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*,
    253 F. Supp. 2d 666 (S.D.N.Y. 2003) ................................................................14

*Morrison v. Nat'l Australia Bank, Ltd.*,
    547 F.3d 167 (2d Cir. 2008) ...............................................................................9

*Murray v. Conseco, Inc.*,
    467 F.3d 602 (7th Cir. 2006) ..............................................................................5

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ...............................................................................5

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
    46 F.3d 230 (2d Cir. 1995) .................................................................................6

*Savoie v. Merchants Bank*,
    84 F.3d 52 (2d Cir. 1996) ...................................................................................7

*Shrader v. CSX Transp.*,
    70 F.3d 255 (2d Cir. 1995) .................................................................................4

*Silverman v. Apker*,
    No. 05 Civ. 6682 (JGK), 2006 U.S. Dist. LEXIS 23406
    (S.D.N.Y. Apr. 17, 2006) ...............................................................................6, 14

*Std. Inv. Chartered, Inc. v. NASD*,
    560 F.3d 118 (2d Cir. 2009) ...............................................................................5

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
    No. 09 Civ. 7058 (VM), 2010 U.S. Dist. LEXIS 14378
    (S.D.N.Y. Feb. 16, 2010)....................................................................................7

*Vandenberg v. Adler*,
    No. 98 Civ. 3544 (WHP), 2000 U.S. Dist. LEXIS 4050
    (S.D.N.Y. Mar. 31, 2000) ...................................................................................6

*Verdel v. Cunningham*,
    No. 07 Civ. 837 (JGK), 2008 U.S. Dist. LEXIS 53358
    (S.D.N.Y. July. 11, 2008) ..................................................................................14

*Zoelsch v. Arthur Andersen & Co.*,
    824 F.2d 27 (D.C. Cir. 1987)..............................................................................12

Page

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  12 .................................................................................................................7
  15 ..............................................................................................................1, 6
  59 ..............................................................................................................1, 5
  60 .................................................................................................................5

Local Civil Rule
  6.3 ................................................................................................................1

Lead Plaintiffs Labourers' Pension Fund of Central and Eastern Canada ("Labourers") and Employees' Retirement System of the Government of the Virgin Islands ("Virgin Islands") (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion: (i) pursuant to Local Civil Rule 6.3 and Fed. R. Civ. P. 59(e) and 60(b), for reconsideration of the Court's February 18, 2010 Opinion (the "Opinion"), which dismissed this action for lack of subject matter jurisdiction, with prejudice, and denied leave to re-plead; and (ii) pursuant to Fed. R. Civ. P. 15(a)(2), for leave to file the [Proposed] Second Amended Class Action Complaint ("SAC"), which addresses those perceived jurisdictional deficiencies.

## I.    PRELIMINARY STATEMENT

This Court should grant reconsideration and vacate that part of its Order that dismissed this action with prejudice, because it could not render a merits-based dismissal once it concluded that it lacked subject matter jurisdiction over Plaintiffs' claims.  The Court should also grant leave to re-plead because the SAC, which cures the perceived deficiencies in the First Amended Class Action Complaint ("FAC"), definitively demonstrates that amendment is not futile.  Indeed, the SAC now details Fortis's[1] U.S. investors and the effect that Defendants' fraud had on them.  In fact, according to the SAC, U.S.-based investors held more than 10% of Fortis's issued and outstanding shares. Moreover, the SAC now affirmatively alleges that Virgin Islands is a U.S. investor that purchased Fortis securities and was harmed by the fraud, which further supports a finding of subject matter jurisdiction here.  Finally, the SAC alleges that the fraud was not only directed to and had a material effect on U.S. investors, but that it was also dependent upon Fortis's U.S. operations, thus giving rise to jurisdiction over the claims of foreign investors, such as Labourers.

---

[1]    Defendants Fortis S.A./N.V., Fortis NV and Fortis Bank S.A./N.V. are referred to herein as "Fortis" and, together with certain of their highest-level executive officers during the relevant time period, as "Defendants."

## II.    STATEMENT OF PERTINENT FACTS[2]

### A.    Fortis and Its Securities

This is a federal securities fraud class action brought on behalf of purchasers of the securities of Fortis between September 17, 2007 and October 14, 2008 (the "Class Period"). *See* FAC, ¶¶1, 21. At all relevant times, Fortis's securities were publicly traded on the Euronext Brussels, Euronext Amsterdam and Luxembourg Stock Exchange. *Id.*, ¶25. Fortis's securities also traded in the U.S. as American Depositary Shares ("ADSs") on the over-the-counter market, as evidenced by American Depositary Receipts ("ADRs"). *Id.*, ¶17.

As detailed in the SAC and in the Declaration of Scott D. Hakala, Ph.D, CFA ("Hakala Decl.," annexed as Exhibit B to the Declaration of Joseph Russello), as of December 31, 2007, investors outside of Europe held approximately 25% – or 550 million shares – of Fortis's 2.2 billion issued and outstanding shares. *See* Hakala Decl., ¶56; SAC, ¶29. Specifically, several hundred U.S.-domiciled institutional investors held an aggregate of 155 million shares as of December 31, 2007, 163 million shares as of March 31, 2008, and 168 million shares as of June 30, 2008. *See* Hakala Decl., ¶6; SAC, ¶30. In fact, U.S. institutional investors increased their holdings by more than 50 million shares during the period from September 30, 2007 to December 31, 2007, when Defendants claimed that "market turmoil" was not impacting Fortis. *See* SAC, ¶30. Further, cumulative net purchases (on a conservative last-in-first-out basis) between September 30, 2007 and June 30, 2008 amounted to over 90 million shares. *See* Hakala Decl., ¶7; SAC, ¶32. Also, U.S.-based institutional investors held an aggregate of between approximately 9 million and 9.5 million ADSs from December 31, 2007 through September 30, 2008. *See* Hakala Decl., Ex. C; SAC, ¶30.

---

[2]    The Opinion is published as *Copeland v. Fortis*, No. 08 civ. 9060 (DC), 2010 U.S. Dist. LEXIS 14726 (S.D.N.Y. Feb. 18, 2010), and page citations herein are made to that version.

Based on this information (which is now alleged in the SAC), Dr. Hakala concluded that the identified holdings of Fortis securities – *i.e.*, ordinary shares and ADSs – represented approximately 7.5% of Fortis's issued and outstanding shares between December 31, 2007 and June 30, 2008. *See* Hakala Decl., ¶6; SAC, ¶31. He further concluded that given the large percentage of unidentified shareholders, Fortis shares held by investors in the U.S., or eligible for treatment in the U.S., ***most likely exceeded 10%*** of Fortis's issued and outstanding shares during most of the Class Period. *See* Hakala Decl., ¶6; SAC, ¶31.

**B.    Procedural History**

On October 22, 2008, Christopher Copeland, an individual who purchased Fortis ADRs during the Class Period and suffered a claimed loss of $72,400, commenced this action through his attorneys, Wolf Haldenstein Adler Freeman & Herz LLP. *See* Docket Entry ("DE") 1, ¶11; DE-15.

On February 3, 2009, this Court appointed Labourers and Virgin Islands, institutions that invested in Fortis securities during the Class Period with aggregate losses of $1,539,304.55, as Lead Plaintiffs, and Coughlin Stoia Geller Rudman & Robbins LLP, as Lead Counsel. *See* DE-22.

On May 18, 2009, Plaintiffs filed the FAC. *See* DE- 26. On July 22, 2009, Defendants filed motions to dismiss. *See* DE-29, 33. In their opening brief, Defendants sought dismissal of all claims alleged in the FAC for failure to state a claim upon which relief can be granted, and further sought dismissal of the claims of so-called "foreign cubed" investors – *i.e.*, foreign investors who purchased Fortis securities on a foreign exchange – for lack of subject matter jurisdiction. *See* Memorandum of Law in Support of Motion to Dismiss the Amended Class Action Complaint by Defendants Fortis S.A./N.V. and Fortis NV, dated July 22, 2009 ("Fortis Mem.," DE-34), at 43 (seeking dismissal of such investors' claims); *see also id*. at 45-46 (arguing that "the jurisdictional question arises only for foreign purchasers of a foreign issuer's securities" and that "only the conduct test need be analyzed for the foreign purchasers' claims here").

- 3 -

On October 2, 2009, Plaintiffs filed their opposition to the motions to dismiss, in which they responded to the arguments raised in Defendants' opening briefs. *See* DE-38. Because Defendants did not question whether subject matter jurisdiction exists over the claims of U.S. investors, Plaintiffs did not address the issue. *See id.* Similarly, because Defendants did not argue at length that the Court should dismiss the FAC "with prejudice," Plaintiffs merely requested leave to amend in a footnote on the last page of their opposition brief. *See id.* at 53, n.24.

Nevertheless, in their reply brief, Defendants argued for the first time that the Court lacked jurisdiction over the claims of *U.S. investors* who purchased ADRs. *See* Reply Memorandum of Law in Further Support of Motion to Dismiss the Amended Class Action Complaint by Defendants Fortis S.A./N.V. and Fortis NV, dated November 13, 2009 ("Fortis Reply Mem.," DE-43), at 6 (seeking dismissal of claims of U.S. purchasers of ADRs). For the first time in their reply brief, Defendants also argued that the Court should dismiss this action "with prejudice" (*see id.* at 19-20), despite their belief that the Court lacked jurisdiction over the claims alleged in the FAC.

### C.    The Court's Opinion

On February 18, 2010, the Court issued the Opinion, dismissing this action with prejudice for lack of subject matter jurisdiction and denying leave to re-plead. Specifically, the Court held that the FAC did not allege "the number or percentage of U.S. resident investors," where they "may have purchased their securities" or how they were "affected by the harm that the foreign purchasers suffered." *See Fortis*, 2010 U.S. Dist. LEXIS 14726, at *20. The SAC now addresses these issues.

## III.    ARGUMENT

A court may grant reconsideration to address any matters "that might reasonably be expected to alter [its] conclusion . . . ." *See Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995) (upholding reconsideration). Thus, for example, reconsideration is appropriate where a court has overlooked pertinent legal authority or facts. *See Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ.

- 4 -

7618 (KMW) (HBP), 2009 U.S. Dist. LEXIS 106798, at *7 (S.D.N.Y. Nov. 16, 2009) (granting

reconsideration); *see also In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, No. 03 MDL

1529 (LMM), 2009 U.S. Dist. LEXIS 56013, at *12 (S.D.N.Y. Jul. 1, 2009) (same).

Reconsideration is also appropriate "'to correct a clear error or prevent a manifest injustice.'" *See*

*Cobalt Multifamily Investors I, LLC v. Shapiro*, No. 06 Civ. 6468 (KMW) (MHD), 2009 U.S. Dist.

LEXIS 60481, at *13 (S.D.N.Y. Jul. 15, 2009) (granting reconsideration and quoting *Official Comm.*

*of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir.

2003)); *see also* Fed. R. Civ. P. 59, 60.[3]

### A.    Having Concluded that It Lacked Jurisdiction Over Plaintiffs' Claims, the Court Was Without Power to Dismiss Them "With Prejudice"

The dismissal of this action "with prejudice," rendered when the Court concluded that it did

not have subject matter jurisdiction, is manifestly unjust because the Court was without power to

render a dismissal on the merits and hence with prejudice.

"Article III deprives federal courts of the power to dismiss a case with prejudice where

federal subject matter jurisdiction does not exist." *Hernandez v. Conriv Realty Assocs.*, 182 F.3d

121, 123 (2d Cir. 1999). Thus, where a court "lacks subject matter jurisdiction, it also lacks the

power to dismiss with prejudice." *Id.*; *see also Std. Inv. Chartered, Inc. v. NASD*, 560 F.3d 118, 126

(2d Cir. 2009) (holding that a judgment dismissing "claims for failure to exhaust administrative

remedies" – and thus lack of subject matter jurisdiction – "is deemed to be a dismissal without

prejudice"); *accord Murray v. Conseco, Inc.*, 467 F.3d 602, 605 (7th Cir. 2006) (reversing dismissal

---

[3]    Although reconsideration is not a tool for dissatisfied parties to litigate matters they have lost after having a full and fair opportunity to do so, this Court *sua sponte* determined that it lacked jurisdiction over the claims of U.S.-based investors – an issue that Plaintiffs did not have an opportunity to address. The Court also *sua sponte* dismissed this case "with prejudice" after it had concluded that jurisdiction was lacking – an issue that Plaintiffs also did not have an opportunity to address. Accordingly, Plaintiffs properly invoke the Court's discretion to grant reconsideration here.

with prejudice based on a lack of subject matter jurisdiction because "[a] court that lacks subject matter jurisdiction cannot dismiss a case with prejudice").

Because this Court concluded that it did not have subject matter jurisdiction, it was "without power to enter a judgment" on the merits and was "compelled simply to dismiss, leaving the dispute unadjudicated." *See ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 94 (2d Cir. 2007), *cert. denied*, 552 U.S. 1295 (2008); *accord Frederiksen v. City of Lockport*, 384 F.3d 437, 439 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot also be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render.").[4] Accordingly, the Court should grant reconsideration and, in doing so, vacate that part of the Opinion which provided for the dismissal of this action with prejudice.

## B.  Leave to Amend is Necessary to Avoid Manifest Injustice

Pursuant to Fed. R. Civ. P. 15(a), "[l]eave to amend should be freely given when justice dictates." *In re Winstar Commc'ns*, No. 01 CV 3014 (GBD), 2006 U.S. Dist. LEXIS 7618, at *4 (S.D.N.Y. Feb. 27, 2006) (citing *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995)); *see also Vandenberg v. Adler*, No. 98 Civ. 3544 (WHP), 2000 U.S. Dist. LEXIS 4050, at *12 (S.D.N.Y. Mar. 31, 2000) (same). "Where there is neither a showing of the movant's undue delay, bad faith or dilatory motive, nor a showing of undue prejudice to the opposing party by virtue of allowance of the amendment, leave to amend should be granted." *Winstar*, 2006 U.S. Dist. LEXIS 7618, at *4. Leave to amend should also be granted where the proposed amendment would not be futile. *See In re Boesky Sec. Litig.*, 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995).

---

[4]     The Court should also vacate that portion of its Opinion that dismissed this action "with prejudice" for an additional reason:  Defendants raised the argument for the first time in their reply, on the basis that "leave to amend . . . would be futile." *See* Fortis Reply Mem. at 19.  As explained herein, "[a]rguments raised for the first time in a party's reply brief should not be a basis for relief." *See Silverman v. Apker*, No. 05 Civ. 6682 (JGK), 2006 U.S. Dist. LEXIS 23406, at *6 (S.D.N.Y. Apr. 17, 2006).

As detailed herein, leave to amend would not be futile because the SAC addresses the perceived pleading deficiencies that the Court described in its Opinion. Moreover, this motion is not the result of bad faith or dilatory motive, but rather is a response to the Court's guidance and direction as to how to address such issues. Accordingly, the Court should grant reconsideration to prevent the manifest injustice that would result from a denial of leave to amend the important yet easily cured jurisdictional issues that the Court identified.

### 1.    Leave to Amend Would Not be Futile Because the SAC Cures Any Perceived Jurisdictional Deficiency in the FAC[5]

The "preliminary showing" necessary to establish subject matter jurisdiction "is not meant to be overly burdensome, 'allowing for . . . jurisdiction so long as the 'the federal claim is colorable.'" *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, No. 09 Civ. 7058 (VM), 2010 U.S. Dist. LEXIS 14378, at *10-11 (S.D.N.Y. Feb. 16, 2010) (quoting *Cromer Fin. v. Berger*, 137 F. Supp. 2d 452, 467 (S.D.N.Y. 2001), which quoted *Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir. 1996)). In a securities case involving foreign investors, a court considering whether jurisdiction exists must be mindful that "'Congress does not want the United States to be used as a base for manufacturing fraudulent security devices for export, even when these are peddled only to foreigners.'" *See In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH), 2004 U.S. Dist. LEXIS 21230, at *10-11 (S.D.N.Y. Oct. 19, 2004) (denying reconsideration in concluding that jurisdiction existed and quoting *Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 122 (2d Cir. 1995)).

---

[5]    "The standard for determining whether a proposed amendment would be futile is . . . that applied to motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6)." *See Apace Communs., LTD. v. Burke*, 584 F. Supp. 2d 591, 593 (S.D.N.Y. 2008). In essence, "[l]eave to amend is properly denied on grounds of futility only if a proposed amendment is clearly frivolous or legally insufficient on its face." *See Boesky*, 882 F. Supp. at 1379 (citation and internal quotation marks omitted).

> **a.    The Allegations of the SAC Demonstrate that Defendants'
> Fraud Had a Substantial Effect on U.S. Investors**

Under the "effects test," subject matter jurisdiction exists here over the claims of U.S.-based investors, regardless of whether they purchased Fortis securities domestically in the form of ADSs or abroad on a foreign exchange. This is because the allegations of the SAC demonstrate that the fraud had a substantial effect on U.S. investors, who held a significant percentage of Fortis securities.

As this Court recognized in the Opinion, "'[t]the effects test concerns the impact of overseas activity on U.S. investors and securities traded on U.S. securities exchanges.'" *See Fortis*, 2010 U.S. Dist. LEXIS 14726, at *7 (quoting *Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 128 n.12 (2d Cir. 1988), *cert. denied*, 525 U.S. 1139 (1999)). Nevertheless, under this test, jurisdiction may exist over the claims of U.S. investors even if the fraud "occurred entirely outside" of the U.S. and the purchase or sale of securities is "predominantly foreign," where the transaction "had a 'substantial effect in the United States or upon United States citizens.'" *In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 561 (S.D.N.Y. 2008). In fact, "[t]he required effect on United States investors can be found even when there are only a 'relatively small number' of American investors." *SCOR Holding*, 537 F. Supp. 2d at 561 n.6 (quoting *Consol. Gold Fields PLC, v. Minorco, S.A.*, 871 F.2d 252, 262 (2d Cir. 1989)). Typically, "[d]omestic plaintiffs have an easier time alleging a 'substantial' effect upon U.S. investors and markets than do foreign plaintiffs." *Fortis*, 2010 U.S. Dist. LEXIS 14726, at *8.

In *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir. 1975), for example, the Second Circuit found jurisdiction over the claims of U.S. investors where "sales aggregating 41,936 shares were made to 22 American residents" – only twice the number of shares that Virgin Islands purchased (*see* DE-15, Ex. C), and far less than the number of shares that the SAC now alleges (and Dr. Hakala confirms) that U.S. investors purchased or held during the Class Period. *See Bersch*, 519

F.2d at 997 ("direct[ing] that the district court eliminate from the class action all purchasers *other than* persons who were residents or citizens of the United States") (emphasis added).

Moreover, even in *In re Nat'l Australia Bank Sec. Litig.*, No. 03 Civ. 6537 (BSJ), 2006 U.S. Dist. LEXIS 94162 (S.D.N.Y. Oct. 25, 2006) ("*Australia Bank*"), which the Second Circuit affirmed in *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167 (2d Cir. 2008), the district court found jurisdiction over the claims of U.S. investors that purchased ADRs of a foreign company (an issue not before the Second Circuit in *Morrison*).[6] *See Australia* Bank, 2006 U.S. Dist. LEXIS 94162, at *8 n.6 ("There is no dispute that the securities law extends to protect domestic investors who purchase securities in domestic markets."); *see also SCOR Holding*, 537 F. Supp. 2d at 561 ("Assuming that the purchase of Converium ADSs on the NYSE and the purchase of Converium shares by U.S. residents on the SWX may be viewed as predominantly foreign securities transactions, it is not contested here that this Court has subject matter jurisdiction over claims arising out of such transactions under the effects test without consideration of the conduct test.").

Here, subject matter jurisdiction exists over Virgin Islands' claims because, as its name implies (and the SAC affirmatively alleges), it is a U.S. entity. *See* SAC, ¶23; *see also Edinburgh Council ex rel. Lothian Pension Fund v. Vodafone Group Pub. Ltd.*, No. 07 Civ. 9921 (PKC), 2009 U.S. Dist. LEXIS 29835, at *3 (S.D.N.Y. Apr. 9, 2009) (granting reconsideration and directing the clerk to re-open a securities fraud case that had been dismissed for lack of jurisdiction, where the court overlooked that a U.S. investor had joined the action). As the SAC now also alleges, Virgin Islands purchased 21,000 shares of Fortis securities worth $427,864.51 and sustained an estimated loss of $375,929.41 as a result of the fraud. *See* SAC, ¶23; *see also* DE-15, Ex. C (Loss Chart).

---

[6]     *See Morrison*, 547 F.3d at 170 n.3 (noting that "Plaintiffs-Appellants focus exclusively on the claims of the Foreign Plaintiffs and do not challenge the dismissal of the Domestic Plaintiff's claims").

Moreover, as Dr. Hakala confirms and the SAC alleges, several hundred U.S.-domiciled institutional investors held an aggregate of 155 million shares of Fortis as of December 31, 2007, 163 million shares as of March 31, 2008, and 168 million shares as of June 30, 2008. *See* Hakala Decl., ¶6, Ex. B-1; SAC, ¶30. In fact, U.S. institutional investors increased their holdings by more than 50 million shares during the period from September 30, 2007 to December 31, 2007, when Defendants claimed that the "market turmoil" was not impacting Fortis. *See* SAC, ¶30. Indeed, as Dr. Hakala concluded, "United States institutional investors and certain other investors often purchased common shares of Fortis directly, rather than as ADRs." *See* Hakala Decl., ¶5. Further, cumulative net purchases (on a conservative last-in-first-out basis) between September 30, 2007 and June 30, 2008 amounted to over 90 million shares. *See* Hakala Decl., ¶7; SAC, ¶32. Also, U.S.-based institutional investors held an aggregate of between approximately 9 million and 9.5 million ADSs from December 31, 2007 through September 30, 2008. *See* Hakala Decl., Ex. C; SAC, ¶30.

Based on this information – all of which is now alleged in the SAC – Dr. Hakala concluded that the identified holdings of Fortis securities – *i.e.*, ordinary shares and ADSs – represented approximately 7.5% of issued and outstanding shares between December 31, 2007 and June 30, 2008. *See* Hakala Decl., ¶6; SAC, ¶31. He further concluded (and the SAC now alleges) that given the large percentage of unidentified shareholders, Fortis shares held by investors in the U.S., or eligible for treatment in the U.S., ***most likely exceeded 10%*** of Fortis's issued and outstanding shares during most of the Class Period. *See* Hakala Decl., ¶6; SAC, ¶31. Thus, it is beyond dispute that hundreds of U.S.-based investors held hundreds of millions of shares of Fortis securities worth billions of dollars during the Class Period. *See* Hakala Decl., Exs. B-1-3, C.

Consequently, the fraud sufficiently affected U.S. investors as to give rise to subject matter jurisdiction over their claims, regardless of where they purchased Fortis securities. *See Minorco*,

871 F.2d at 262 (finding jurisdiction where "American residents representing 2.5% of Gold Fields' [a British company] shareholders owned 5.3 million shares with a market value of about $120 million"); *Bersch*, 519 F.2d at 980 & 991 (finding jurisdiction where 22 U.S. residents purchased 41,936 shares in an offering that was not meant for the U.S.); *Cornwell v. Credit Suisse Group*, No. 08 Civ. 3758 (VM), 2010 U.S. Dist. LEXIS 13927, at *9-10 (S.D.N.Y. Feb. 11, 2010) (allegation that U.S. institutional investors held 11.4% of shares was sufficient); *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 351 (D. Md. 2003) (noting that "it has not been disputed that the court in this case has jurisdiction over the claims of domestic investors, regardless of where they purchased the securities").  In fact, in granting leave to amend in a securities class action one week before this Court issued the Opinion, the court in *Credit Suisse* held that similar allegations gave rise to subject matter jurisdiction over the claims of U.S. investors, regardless of where they purchased their shares.  *See* 2010 U.S. Dist. LEXIS 13927, at *9-10.

Furthermore, as the FAC alleges, the fraud was highly dependent upon Fortis's U.S.-based operations, which furnished information about aspects of Fortis's business – such as the value of collateralized debt obligations – that Defendants manipulated and misrepresented.  Although the Court regarded these activities as merely "ancillary" to the fraud in applying the "conduct test" (*see Fortis*, 2010 U.S. Dist. LEXIS 14726, at *15), they are nonetheless sufficient to confer jurisdiction over the claims of U.S. investors.  *See Bersch*, 519 F.2d at 993 ("While merely preparatory activities in the United States are not enough to trigger application of the securities laws for injury to foreigners located abroad, they are sufficient when the injury is to Americans so resident."); *see also Australia Bank*, 2006 U.S. Dist. LEXIS 94162, at *8 n.6 & *26 (finding jurisdiction over claims of U.S. investors who purchased ADRs domestically but dismissing claims of named lead domestic plaintiff, with leave to amend, for failing to sufficiently allege damages).

Accordingly, the proposed amendments in the SAC would not be futile. Rather, the SAC corrects the perceived deficiencies that the Court identified in the Opinion.

> **b.    The SAC Alleges a Basis for Subject Matter Jurisdiction Over the Claims of Foreign Investors**

The allegations of the SAC also give rise to subject matter jurisdiction over the claims of foreign investors. Indeed, as an initial matter, jurisdiction exists over the claims of foreign investors who purchased Fortis ADSs domestically for virtually the same reasons that jurisdiction exists over the claims of U.S. investors who purchased ADSs. *See Royal Ahold*, 219 F.R.D. at 351 (noting that "it has not been disputed that the court in this case has jurisdiction . . . over the claims of foreign investors who purchased Royal Ahold American Depositary Receipts [] on a domestic exchange," because the activity would "have significant effects in the United States.").[7]

Moreover, as noted herein, the fraud, which was dependent upon Fortis's U.S. operations, had far-reaching effects here. As alleged in the FAC and again in the SAC, Fortis maintained a substantial portion of its banking operations in the U.S. during the Class Period. Moreover, Defendants diverted assets from Fortis's U.S.-based operations in order to mitigate the costs associated with the acquisition of certain banking assets, which was part and parcel of their effort to fraudulently conceal the impact that the acquisition was having on Fortis's financials. As the SAC alleges, Labourers is a Canadian entity that, like other foreign investors, purchased its shares of Fortis securities abroad and was injured thereby. *See* SAC ¶22. Its claims should not be foreclosed.

---

[7]    The Second Circuit has endorsed the "general statement" that "jurisdiction [exists] whenever any individual is defrauded in this country, regardless of whether the offer originates somewhere else, for the actual consummation of securities fraud in the United States in and of itself would constitute domestic conduct that satisfies all the elements of liability.'" *Banque Paribas*, 147 F.3d at 131 n.19 (quoting *Zoelsch v. Arthur Andersen & Co.*, 824 F.2d 27, 33 n.4 (D.C. Cir. 1987), but holding that jurisdiction did not exist over the claims of a foreign investor who purchased a foreign security through its own U.S. agent, where there was no perceptible harm to the U.S.).

Furthermore, because Plaintiffs have not had an opportunity to conduct discovery concerning the fraud, they cannot articulate the additional ways in which the fraud depended upon Fortis's U.S. operations or was perpetrated in this Country. *See Vivendi Universal*, 2004 U.S. Dist. LEXIS 21230, at *12 (noting that "the factual basis for a court's subject matter jurisdiction may remain an issue through trial"); *cf. Banque Paribas*, 147 F.3d at 128 n.14 (noting that "[t]he extent of U.S. holdings is often relevant to the issue of whether some alleged frauds affected the United States" but holding that discovery of the effects of the fraud was unnecessary because the misleading statements were confined to two investors).

In any event, even if the Court continues to believe that it lacks subject matter jurisdiction over the claims of any foreign investors, it should, as explained herein, dismiss those claims *without* prejudice in compliance with settled law, so as to prevent manifest injustice.

### 2. The SAC is Not the Result of Undue Delay or Bad Faith and the Proposed Amendments Would Not Prejudice Defendants

The absence from the FAC of the allegations set forth in the proposed SAC was not the result of Plaintiffs' undue delay or bad faith. Rather, these allegations are the result of Plaintiffs' effort to promptly address and remedy the perceived deficiencies that the Court identified for the first time in the Opinion. In this respect, the "jurisdictional" allegations described herein (and now contained in the SAC) were not thought to have been necessary until the Court rendered its Opinion, which explains why they were not included in the FAC. *See Credit Suisse*, 2010 U.S. Dist. LEXIS 13927, at *9-10 (issued only one week before the Opinion).

Moreover, Plaintiffs never had an opportunity to address whether the allegations of the FAC are sufficient to give rise to subject matter jurisdiction over the claims of U.S. investors, which is, for the first time, addressed herein. In fact, Defendants never properly questioned whether jurisdiction exists over the claims of U.S. purchasers of Fortis securities, raising the issue for the first time in

their reply.[8]  Nor did they properly argue that dismissal "with prejudice" is appropriate here – an argument that Plaintiffs would have opposed for the very reasons expressed herein.

Finally, the initial complaint, filed on behalf of individual investor Christopher Copeland by different attorneys, was prepared without input from Plaintiffs or their counsel, and was, in any event, superseded by the FAC.  *See Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999) (noting that "it is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect") (citation and internal quotation marks omitted).  The initial complaint should thus not count against *Plaintiffs'* request for leave to amend.

---

[8]     "Arguments raised for the first time in a party's reply brief should not be a basis for relief."  *Silverman*, 2006 U.S. Dist. LEXIS 23406, at *6 (citing *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 113 (2d Cir. 1999), in which the court held that "new arguments may not be made in a reply brief"); *see also DSND Subsea AS v. Oceanografia, S.A. de C.V.*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008) (noting that "defendant was not precluded from making a substantive due process argument in its moving papers and cannot now raise it for the first time in its reply papers"); *Verdel v. Cunningham*, No. 07 Civ. 837 (JGK), 2008 U.S. Dist. LEXIS 53358, at *19 n.1 (S.D.N.Y. July. 11, 2008) (refusing to consider a claim "raised for the first time in a reply brief" and citing *Evangelista v. Ashcroft*, 359 F.3d 145, 156, n.4 (2d Cir. 2004)).  Such newly-raised arguments are improper, prejudicial and must be rejected, because the opposing party cannot respond to them and "full consideration and development of the[] issues require[s] that the arguments be raised in the original moving papers."  *See Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*, 253 F. Supp. 2d 666, 680 (S.D.N.Y. 2003) (refusing to grant summary judgment "on the basis of arguments that are first raised in reply").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant reconsideration and allow Plaintiffs to file the SAC.

DATED:  March 8, 2010

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
JOSEPH RUSSELLO

_/s/ Joseph Russello_

JOSEPH RUSSELLO

58 South Service Road, Suite 200
Melville, New York  11747
Telephone:  631/367-7100
631/367-1173 (fax)

_Lead Counsel for Plaintiffs_

KOSKIE MINSKY LLP
MICHAEL MAZZUCA
20 Queen Street West
Suite 900, Box 52
Toronto, Ontario
M5H 3R3
Telephone:  416/977-8353
416/977-3316 (fax)

_Additional Counsel for Plaintiffs_

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 8, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

COUGHLIN STOIA GELLER RUDMAN &
ROBBINS LLP


*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)